FILED
Oct 15, 2020
03:00 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| Emad Hanna, | ) | Docket No. 2019-06-2116 |
| Employee, | ) | |
| | ) | |
| v. | ) | State File No. 21526-2019 |
| Marriott International, DBA Gaylord Opryland, | ) | |
| | ) | |
| Self-insured Employer. | ) | Judge Kenneth M. Switzer |

---

## EXPEDITED HEARING ORDER

---

Emad Hanna injured his arm, shoulder and neck while working at Marriott International. Marriott authorized treatment with two panel-selected physicians, both of whom have concluded that his current condition is not related to work. Mr. Hanna disagreed, relying on records from his unauthorized physician and asking the Court to order additional treatment. After an October 13, 2020 expedited hearing, the Court holds that Mr. Hanna is unlikely to prove at a compensation hearing that his current neck condition is work-related and denies his request.

### History of Claim

Mr. Hanna worked as a banquet server, and on March 20, 2019, he scooped ice cream for approximately an hour and a half. The ice cream was frozen like "rocks," according to his affidavit. Near the end of that time, Mr. Hanna started to feel right-shoulder pain and numbness in his right hand. Marriott offered a panel of physicians, and he chose Dr. Robert Carver.

After the first visit, Dr. Carver diagnosed a right-sided trapezius sprain and subacromial bursitis of the shoulder, as well as cervical spondylosis without myelopathy and referred him to physical therapy. After additional visits, Dr. Carver began to question the cause of Mr. Hanna's condition. An April 3 note states, "Trapezius soreness that persists beyond 2 weeks/6 therapy visits is more likely related to the cervical spondylitic change than to scooping ice cream for over an hour." Dr. Carver ultimately placed him at

1

maximum medical improvement on April 11 and discharged him from treatment. Throughout, he placed no work restrictions.

Mr. Hanna's pain persisted, so he treated on his own. In May, he saw Dr. Amir Abtahi, who reviewed the results of an MRI and an EMG. He diagnosed neck pain, radiating pain on the right side and a herniated disc at a specific level. Dr. Abtahi recommended more physical therapy and injections, and he placed work restrictions.

Approximately one month later, and after Mr. Hanna filed his petition for benefit determination, he contacted Dr. Abtahi's office seeking a written opinion on the work-relatedness of his injury. Notes documenting the request stated the following:

**Sheena Cuccia, RN at 6/6/2019 11:29 AM**

| Author: Sheena Cuccia, RN | Service: — | Author Type: Registered Nurse |
|---|---|---|
| Filed: 6/6/2019 12:21 PM | Encounter Date: 6/5/2019 | Status: Signed |
| Editor: Sheena Cuccia, RN (Registered Nurse) | | |

Returned call to patient. Patient has injection scheduled with Dr. Yang on 06/18/19 and follow up appointment with Dr. Abtahi on 06/25/19. patient said his work has sent in paperwork to our fax number attn tasha regarding if this is a work related injury. Patient is being seen under his regular insurance but trying to get it determined workers comp injury. Patient is needing paperwork and a letter stating it was a work related injury. Per LOV note patient has right upper extremity pain that per patient started when he began scooping ice cream , Patient works at Gaylord opryland. Human resources number is 615-458-1841 and manager is mckinney blair 615-618-3986. Attempted to contact both to get further information. LMTCB. tasha can you try to call at another time regarding paperwork. Dr. Abtahi would this be deemed workers comp or are we able to determine this for patient?

Electronically signed by Sheena Cuccia, RN at 6/6/2019 12:21 PM

**Amir Michael Abtahi, MD at 6/10/2019 7:29 AM**

| Author: Amir Michael Abtahi, MD | Service: — | Author Type: Physician |
|---|---|---|
| Filed: 6/10/2019 7:29 AM | Encounter Date: 6/5/2019 | Status: Signed |
| Editor: Amir Michael Abtahi, MD (Physician) | | |

Based on his history and my assessment of him, I do believe that this would be WC

Electronically signed by Amir Michael Abtahi, MD at 6/10/2019 7:29 AM

A few days later, a letter was drafted stating:

**Letters**

**Letter by Amir Michael Abtahi, MD on 6/14/2019**

Status: Sent
Letter body:

To whom it may concern:

Patient last seen Dr. Amir Abtahi on 05/07/19. Per Dr. Amir Abtahi recommendation that patients injuries and pain occurred while at work and performing job related duties. Please see attached office notes that we have provided. Please call us with any questions or concerns at 615-875-5100.

Thank you
Sheena Cuccia RN
Dr. Amir Abtahi

Dr. Abtahi continued treating Mr. Hanna. At his final visit with Dr. Abtahi in

October 2019, he reported no neck or upper-extremity pain but remaining numbness in C5-6. Dr. Abtahi wrote that the numbness might take months to resolve, and he said he would see him again "as needed."

Marriott followed up with Dr. Carver by letter in September 2019 after learning of Dr. Abtahi's treatment. It asked him to provide a causation opinion after considering Dr. Abtahi's records, which it enclosed. Dr. Carver responded that Mr. Hanna has cervical spondylosis and that an MRI showed "chronic degenerative changes resulting in moderate to severe neuroforaminal stenosis bilaterally." He checked "no" to the question about whether this diagnosis and need for treatment arose "primarily (greater than 50%) out of the reported work injury."

After the parties unsuccessfully mediated, Marriott offered a second panel of orthopedists for another causation opinion, and Mr. Hanna chose Dr. Sean Kaminsky.

In June 2020, Dr. Kaminsky evaluated him and reviewed MRIs and ordered x-rays. He reached the essentially same diagnosis as Drs. Carver and Abtahi and concluded, "these degenerative and arthritic changes likely occurred over time and would predate the March 2019 work incident. Based on these imaging findings and degenerative changes I cannot state that the work episode of 2019 when scooping ice cream would be causative of his cervical radiculopathy." Dr. Kaminsky released Mr. Hanna to full-duty work.

Afterward, Marriott's attorney sent a letter confirming his causation opinion. Dr. Kaminsky checked "no" to whether ice-cream scooping contributed more than fifty percent in causing Mr. Hanna's cervical radiculopathy, considering all causes.

Mr. Hanna requested additional treatment, payment of past medical bills, permanent disability benefits and continued employment with Marriott. Marriott countered that it has provided all benefits to which he is entitled, and he did not introduce any bills into evidence.[1]

## Findings of Fact and Conclusions of Law

Mr. Hanna must show that he is likely to prevail at a compensation hearing regarding the work-relatedness of his injury and his entitlement to additional treatment. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To prevail, Mr. Hanna must show that his current condition and need for treatment

---

[1] Mr. Hanna must successfully introduce bills into evidence showing that they are reasonable, necessary and related to the work incident before the Court can consider ordering their payment. His request for permanent disability benefits is premature at the expedited hearing stage. As for his employment status, the Court has no authority to order Marriott to reinstate his employment.

arose primarily out of and in the course and scope of his employment with Marriott. An injury arises primarily out of employment if it is caused by a "specific incident, or set of incidents, and shall not include the aggravation of a preexisting condition "unless it can be shown to a reasonable degree of medical certainty that they aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). Mr. Hanna must show that the employment contributed more than fifty percent in causing the need for treatment. Tenn. Code Ann. § 50-6-102(14)(C).

Here, Mr. Hanna testified with sincerity about injuring his arm, shoulder and neck while scooping ice cream at work. Marriot does not contest that happened. Therefore, Mr. Hanna proved a "specific incident or set of incidents." Instead, Marriott argues that his current neck condition did not arise primarily out of employment but rather is the result of preexisting, degenerative changes.

The issue pits the causation opinions of Drs. Carver and Kaminsky against Dr. Abtahi's. Mr. Hanna chose Drs. Carver and Kaminsky from panels, so their opinions are presumed correct, but Mr. Hanna can rebut this presumption by a preponderance of the evidence with Dr. Abtahi's opinion. The causation opinion of a treating physician selected from a panel is presumed correct, but this presumption is rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E).

Looking first at the authorized physicians' statements, in his April 3 notes, Dr. Carver first wrote that the trapezius soreness was "more likely related to the cervical spondylitic change than to scooping ice cream for over an hour." Several months later after reviewing Dr. Abtahi's notes, he reached the same conclusion in a letter to the adjuster. Specifically, he wrote that MRI results showed "chronic degenerative changes," and he checked "no" to the question about whether this diagnosis and need for treatment arose "primarily (greater than 50%) out of the reported work injury."

Dr. Kaminsky shares this opinion, concluding after review of the MRIs and x-rays that Mr. Hanna has "degenerative and arthritic changes [that] likely occurred over time and would predate the March 2019 work incident." He, too, responded to a letter from Marriott stating that work is not more than fifty-percent responsible for Mr. Hanna's current condition. Both physicians' opinions are unambiguous and firmly held.

In contrast, Dr. Abtahi wrote in an email to his nurse that "based on his history and my assessment of him, I do believe this would be WC." Afterward, the doctor's office sent a letter stating that Dr. Abtahi last saw Mr. Hanna on May 7, 2019, and "per his recommendation patients [sic] injuries and pain occurred while at work and performing job related duties." The letter contains the names of Dr. Abtahi and his nurse, but it does not bear handwritten or electronic signatures. The letter might have been written by the nurse, since it states, "per his recommendation." Given these concerns, the Court places little

4

weight on its conclusions.[2]

Therefore, on this record, Mr. Hanna has not rebutted the presumption of correctness given to the panel-selected doctors' opinions. He has not presented sufficient evidence from which this Court can conclude that he is likely to prevail at a compensation hearing.

**IT IS ORDERED** as follows:

1.  Mr. Hanna's requested relief is denied.

2.  This case is set for a scheduling hearing on **November 30, 2020, at 9:00 a.m. Central Time.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate. Failure to call might result in a determination of the issues without your participation. Marriott must arrange for a court-certified (Egyptian) Arabic interpreter at this hearing.

**ENTERED October 15, 2020.**

*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1.  Mr. Hanna's Affidavit
2.  First Report of Injury
3.  Form C-42 Choice of Physician-Concentra
4.  Form C-42 Choice of Physician-Dr. Kaminsky
5.  Employer's Medical Records
6.  Employee's Medical Records

Technical record:
1.  Petition for Benefit Determination
2.  Dispute Certification Notice and Employer's Additional Issues

---

[2] Near the beginning of the hearing, Marriott objected to the admissibility of this letter, arguing, among other contentions, that it is neither signed by hand or electronically. *See* Tenn. Comp. R. & Regs. 0800-02-21-.16(2)(b) and 0800-02-21-.15(2). The Court agreed, prompting Mr. Hanna to request a continuance so he can obtain a signed letter. Marriott objected to the continuance. The Court then offered Marriott the choice to either withdraw its objection and proceed with the hearing, or continue the hearing. It opted to move forward.

3. Show-Cause Order
4. Employer's Motion to Dismiss
5. Request for Expedited Hearing
6. Order on Show-Cause Hearing
7. Order on Status Conference, June 30, 2020
8. Order on Status Conference, August 10, 2020
9. Employer's Expedited Hearing Position Statement

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on October 15, 2020.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Emad Hanna, self-represented employee | | X | X | taimour2008@yahoo.com 5016 Millpond Court Mt. Juliet TN 37122 |
| Travis Ledgerwood, employer's attorney | | | X | tledgerwood@morganakins.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____


_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*